**Myrna E. FRIEDMAN,
Plaintiff-Appellee,**

v.

**SUPREME COURT OF VIRGINIA;
David B. Beach,
Defendants-Appellants,**

**American Corporate Counsel
Association Amicus Curiae.**

No. 86–3170.

United States Court of Appeals,
Fourth Circuit.

Argued March 3, 1987.

Decided June 12, 1987.

Rehearing and Rehearing En Banc
Denied July 21, 1987.

Gregory E. Lucyk, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen. of Virginia, Gail Starling Marshall, Deputy Atty. Gen., James T. Moore, III, Senior Asst. Atty. Gen., on brief), for defendants-appellants.

Cornish F. Hitchcock (Alan B. Morrison, Public Citizen Litigation Group, John J. Mclaughlin on brief), for plaintiff-appellee.

Before WINTER, Chief Judge, ERVIN, Circuit Judge, and YOUNG, United States District Judge for the District of Maryland, sitting by designation.

HARRISON L. WINTER, Chief Judge:

The Rules of the Supreme Court of Virginia permit some Virginia residents, but prevent nonresidents, from gaining admission to the Virginia bar on motion without having to take the bar examination. The district court ruled that this restriction violates the Privileges and Immunities Clause of Article IV, § 2 of the United States Constitution. The defendants appeal and we affirm.

## I.

Plaintiff Myrna E. Friedman is a member of the Illinois and the District of Columbia bars who currently resides in the state of Maryland and practices law exclusively in the state of Virginia. The plaintiff was admitted to the Illinois bar in 1977 and to the District of Columbia bar in 1980. In January of 1986, plaintiff became Associate General Counsel of ERC International, Inc., which is headquartered in Vienna, Virginia. When she took her position with ERC International, the plaintiff lived in Arlington, Virginia. Indeed, she had lived in Virginia when she practiced law in the District of Columbia. Before she filed her application for admission to the Virginia bar, however, the plaintiff got married and moved to her husband's home in Cheverly, Maryland. The plaintiff continues to work full-time at the corporate office in Virginia.

The plaintiff filed an application requesting admission to the Virginia bar without having to take the bar examination (admission on motion) in June of 1986. Her application was denied. Under the rules of the Virginia Supreme Court, the plaintiff was ineligible for admission to the Virginia bar on motion solely because she does not reside in Virginia. Subsequently, Ms. Friedman filed suit in the district court against the responsible state officials pursuant to 42 U.S.C. § 1983 to invalidate the provision of the Rules of the Virginia Supreme Court which disqualified her for admission to the state bar on motion. After hearing arguments, the district court entered summary judgment for the plaintiff on the ground that the challenged provision of the Virginia rules violates the Privileges and Immunities Clause of the U.S. Constitution.

## II.

Va.Code § 54–67 authorizes the Supreme Court of Virginia to adopt rules which admit experienced lawyers to the Virginia bar without taking the bar examination. The current rule in effect is Rule 1A:1 which provides that an applicant may be admitted on motion if he has been licensed for five years by a jurisdiction which admits Virginia bar members without examination and if he:

(a) Is a proper person to practice law.

(b) Has made such progress in the practice of law that it would be unreasonable to require him to take an examination.

(c) Has become a permanent resident of the Commonwealth.

(d) Intends to practice full-time as a member of the Virginia Bar.[1]

---

1. Rule 1A:1 in full provides:

Any person who has been admitted to practice law before the court of last resort of any state or territory of the United States or of the District of Columbia may file an application to be admitted to practice law in this Commonwealth without examination, if counsel licensed to practice here may be admitted to practice there without examination.
The applicant shall:
(1) File with the clerk of the Supreme Court at Richmond an application, under oath, upon a form furnished by the clerk.
(2) Furnish a certificate, signed by the presiding judge of the court of last resort of the

The Virginia Supreme Court interprets the full-time practice requirement of Rule 1A:1(d) to mean that an applicant must show that he intends to open an office in Virginia for the practice of law and to engage regularly in the practice of law in Virginia. *In re Brown*, 213 Va. 282, 191 S.E.2d 812, 815 n. 3 (1972).

Virginia Rule 1A:1 has been challenged on federal constitutional grounds on at least two prior occasions. A due process challenge to the Virginia Rule was rejected in *Brown v. Supreme Court of Virginia*, 359 F.Supp. 549 (E.D.Va.), *aff'd mem.*, 414 U.S. 1034, 94 S.Ct. 533, 38 L.Ed.2d 327 (1973). In addition, we have rebuffed a challenge to the full-time practice requirement of Rule 1A:1(d) under the Due Process and Commerce Clauses of the Constitution. *Goldfarb v. Supreme Court of Virginia*, 766 F.2d 859 (4 Cir.1985). These cases establish that Virginia Rule 1A:1, taken as a whole, and the full-time practice requirement of Rule 1A:1(d) serve a legitimate state interest by ensuring that attorneys admitted to the bar are familiar with the laws of Virginia. *See also In re Titus*, 213 Va. 289, 191 S.E.2d 798 (1972); *In re Brown, supra*. No court, however, has addressed the issue presented in this case: Does the residency requirement of Rule 1A:1(c), which limits admission without examination to Virginia residents, violate the Privileges and Immunities Clause of Article IV, § 2 of the Constitution. *See Goldfarb v. Supreme Court of Virginia*, 766 F.2d at 865 n. 7.

### III.

Article IV, § 2 of the Constitution states that the "citizens of each State shall be entitled to all privileges and immunities of Citizens in the several States." The district court, applying the test for prohibited discrimination against the citizens of the several states, found that Virginia Rule 1A:1 violated Article IV, § 2, relying principally on the Supreme Court's recent decision in Supreme Court of *New Hampshire v. Piper*, 470 U.S. 274, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985).

In *Piper*, the Court held that the practice of law is a privilege that is protected by Article IV, § 2 of the Constitution. 470 U.S. at 280–81, 105 S.Ct. at 1277. The practice of law, the Court reasoned, is important to the national economy and is an important part of commercial intercourse between the states. *Id.* Moreover, out-of-state lawyers play an important role in protecting the wellbeing of a federal union by representing persons who raise unpopular federal claims. *Id.*, 470 U.S. at 281–82, 105 S.Ct. at 1277.

The district court held that Rule 1A:1(c) impermissibly burdens the privilege of practicing law in Virginia by requiring only nonresident attorneys who decide to practice full-time in Virginia to take a bar examination in order to qualify for the practice of law while some resident attorneys are afforded that privilege without having to take the examination. The state maintains that the district court misapplied *Piper* in reaching this conclusion because there is no fundamental right to practice law

---

jurisdiction in which he is entitled to practice law, stating that he has been so licensed for at least five years.

(3) Furnish a report of the National Conference of Bar Examiners concerning his past practice and record.

(4) Pay a filing fee of fifty dollars.

Thereafter, the Supreme Court will determine whether the applicant:

(a) Is a proper person to practice law.

(b) Has made such progress in the practice of law that it would be unreasonable to require him to take an examination.

(c) Has become a permanent resident of the Commonwealth.

(d) Intends to practice full-time as a member of the Virginia bar.

In determination of these matters the Supreme Court may call upon the applicant to appear personally before a member of the Court or its executive secretary and furnish such information as may be required.

If all of the aforementioned matters are determined favorably for the applicant, he shall be notified that some member of the Virginia bar who is qualified to practice before the Supreme Court may make an oral motion in open court for his admission to practice law in this Commonwealth.

Upon the applicant's admission, he shall thereupon in open court take and subscribe to the oaths required of attorneys at law, whereupon he shall become an active member of the Virginia State Bar.

without taking a bar examination. *See Leis v. Flynt*, 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979). We find the state's argument unpersuasive.

The Privileges and Immunities Clause protects more than those rights which are considered fundamental individual rights protected by the Fourteenth Amendment. *Piper, supra*, 470 U.S. at 281 n. 10, 105 S.Ct. at 1277 n. 10; *Hicklin v. Orbeck*, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978). In the modern view, Article IV, § 2 attempts to "fuse into one Nation a collective of independent, sovereign States." *Toomer v. Witsell*, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948).[2] Thus, the Court has found on many occasions that the Clause guarantees to the citizens of the nation that they may do business within a state on the same terms as the citizens of that state. *Id.* In doing so, the Court has extended the protection of the Privileges and Immunities Clause to a variety of economic interests which are not considered fundamental rights within the sphere of the Fourteenth Amendment. *See Hicklin v. Orbeck, supra* (invalidating job preferences for state residents); *Toomer v. Witsell, supra* (invalidating a license fee for shrimp boats operated by nonresidents); *Ward v. Maryland*, 79 U.S. (12 Wall) 418, 20 L.Ed. 449 (1871) (invalidating special fees to nonresidents for licenses to trade in goods not manufactured in Maryland).[3] The Court has extended the protection of the Privileges and Immunities Clause to those rights which are " 'fundamental' to

the promotion of interstate harmony." *Piper, supra*, 470 U.S. at 279, 105 S.Ct. at 1276; *Baldwin v. Fish and Game Commission of Montana*, 436 U.S. 371, 388, 98 S.Ct. 1852, 1862–63, 56 L.Ed.2d 354 (1978). Indeed, in *Piper* the Court held that the practice of law was protected by § 2 of Article IV although the right to practice law has never been found to be a fundamental right. Thus, the Virginia Rule in this case unquestionably burdens a privilege which is protected by Article IV, § 2.

The Virginia Rule is subject to scrutiny under Article IV, § 2 because the Rule has a disproportionate impact on the practice of law by citizens of the several states who are not residents of Virginia. The effect on nonresidents is obvious because the state has chosen to distinguish between citizens of the state and noncitizens on the face of the enactment; the discriminatory effect of Rule 1A:1 falls entirely on nonresidents of Virginia.

It is true that Rule 1A:1, taken as a whole, burdens many residents of Virginia as well as nonresidents. The Rule allows a person to enter practice on motion only if he has been a member of the bar of another state for five years. Residents of the state who begin their career by practicing in Virginia must take a bar examination; they may never be admitted to the bar on motion. In addition, the Rule also affects new residents who do not meet this five year continuous practice requirement. However, the provision precluding the

---

**2.** The purpose of the Clause is stated in the provision of the Articles of Confederation from which the Article IV, § 2 of the Constitution was derived:

> The better to secure and perpetuate mutual friendship and intercourse among the people of the different states in this union, the free inhabitants of each of these states ... shall be entitled to all privileges and immunities of free citizens in the several states; and the people of each State shall have free ingress and regress to and from any other State, and shall enjoy therein all the privileges of trade and commerce, subject to the same duties, impositions, and restrictions, as the inhabitants thereof respectively ...

Art. Of Confed. art. IV, in 9 J. of Continental Congress 908 (W.Ford ed. 1906). The shorter version of this provision which was included in

the Constitution was not intended to change the substantive meaning of the Clause. *Austin v. New Hampshire*, 420 U.S. 656, 661, 95 S.Ct. 1191, 1195, 43 L.Ed.2d 530 (1975).

**3.** In *Baldwin v. Fish and Game Commission of Montana*, 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978), the Court held that the interest of nonresidents in the sport of elk hunting in a state does not fall within the purview of the Privileges and Immunities Clause because elk hunting is not an activity which is basic to the well-being of the union. 436 U.S. at 388, 98 S.Ct. at 1862–63. The decision distinguished the sport of elk hunting from the pursuit of "common callings within the state" for which the state may not place unreasonable burdens on nonresidents of the state. 436 U.S. at 383, 98 S.Ct. at 1860.

plaintiff's admission on motion to the Virginia bar, the residency requirement of Rule 1A:1(c), applies on its face exclusively to nonresidents. While other provisions of the Rule—such as the full-time practice requirement or the requirement that an applicant for on-motion admission be a member of the bar of another state—may burden residents of Virginia, the effect of these provisions does not remove or detract from the facial disparity in the treatment of citizens and noncitizens by Rule 1A:1(c).

█ The requirement that nonresidents who are committed to practicing in the state of Virginia must take the bar examination certainly imposes a burden on the practice of law that justifies application of the scrutiny required by Article IV, § 2. Taking a bar examination requires the payment of a fee; it involves the time and expense of becoming acquainted with state law through appropriate study materials or review courses; it results in a period of delay for successful applicants before they may be admitted to the bar which may have a serious, albeit temporary, effect on their legal practice; and, of course, the bar examination itself involves the risk that even an experienced attorney may fail. The Rule imposes these burdens on nonresident citizens who are not represented in the Virginia Assembly.[4] The effect of Rule 1A:1(c) is to deter attorneys who are leaving their previous practice to practice in this region, and who plan to live in Washington or Maryland, from competing with members of the Virginia bar. The Rule also encourages persons who will practice law in Virginia to purchase a home in Virginia instead of elsewhere. Thus, the provision is arguably designed as a means of economic protectionism with the attend-

ant adverse affect of disrupting interstate harmony.[5] We find, therefore, that these burdens justify application of the traditional test for scrutinizing discrimination against the citizens of other states.

Virginia contends that this analysis is inapplicable because Rule 1A:1 does not absolutely prohibit the practice of law in Virginia by nonresidents. The Court, however, has closely scrutinized burdens imposed by a state such as license fees or hiring preferences under Article IV, § 2 even though such burdens are not wholesale restrictions on the privileges and immunities of citizens of the union. *Hicklin v. Orbeck, supra* (job preferences); *Toomer v. Witsell, supra* (license fee); *Ward v. Maryland, supra,* (fees). Under the state rule struck down in *Piper,* in fact, the plaintiff "was not excluded totally from the practice of law in New Hampshire." *Supra,* 470 U.S. 277 n. 2, 105 S.Ct. at 1275 n. 2. Nonresident attorneys were authorized to appear before the state courts of New Hampshire *pro hac vice.* However, this alternative, like a bar examination, burdened out-of-state lawyers by precluding them from practicing in New Hampshire on the same terms as a resident attorney. *Id.*

Defendants cite *Sestric v. Clark,* 765 F.2d 655 (7 Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 862, 88 L.Ed.2d 901 (1986) as authority to support the validity of the challenged restriction. In that case, the Seventh Circuit analyzed a provision of Illinois law which allowed new residents to become a member of the state bar on motion, but required nonresidents to take a bar examination. The court concluded that the Illinois rule affected old residents who were not eligible for admission on motion,

---

**4.** Justice Stone pointed out the problem of state legislation which burdens persons who do not reside within the state in *South Carolina State Highway Department v. Barnwell Brothers,* 303 U.S. 177, 185 n. 2, 58 S.Ct. 510, 513–14 n. 2, 82 L.Ed. 734 (1938):

When the regulation is of such a character that its burden falls principally upon those without the state, legislative action is not likely to be subjected to those political restraints which are normally exerted on legislation where it affects adversely some interests within the state.

*See, generally,* J.N. Eule, Laying the Dormant Commerce Clause to Rest, 91 Yale L.J. 425 (1982).

**5.** The Court in *Piper* noted that one reason that has been expressed for state rules raising barriers to admission to the bar by nonresident attorneys is to "erec[t] fences against out-of-state lawyers ... to protect [in-state] lawyers from professional competition." 470 U.S. at 285 n. 18, 105 S.Ct. at 1279 n. 18, 84 L.Ed.2d at 214 n. 18 (quoting a former president of the American Bar Association).

and new residents who did not meet a continuous practice requirement, as well as nonresident applicants to the bar. 765 F.2d at 659–60. As a result, the court concluded that the statute raised no suspicion that it was an arbitrary limit on the privileges of nonresident citizens because the rule primarily affected resident citizens.

The Seventh Circuit also ruled that the Illinois rule involved no "net burden" to nonresident attorneys because applicants to the bar who moved to Illinois were likely to be giving up their previous practice in another state, while applicants who sought to maintain their residency in another state were more likely seeking to add to their current practice. Thus, resident attorneys escaped a bar examination but lost an established practice, while nonresident attorneys faced a bar examination but gained an additional area for their law practice. *Id.* Based on this assessment of the costs and benefits of the Illinois residency requirement, the court concluded that the plaintiff had failed to make out a prima facie case under the Privileges and Immunities Clause.

We need not consider the merits of the decision in *Sestric*, because the provision of Illinois law discussed there omitted Virginia's requirement that an applicant intend to practice full-time in the state. The addition of this requirement alters the results of the Seventh Circuit's analysis. Rule 1A:1(c) requires the plaintiff to become a permanent resident of Virginia in order to qualify for admission on motion, over and above the requirement of the Rule that persons be committed to practicing full-time in Virginia. The provision exclusively burdens citizens of the several states who intend to practice law full-time within the confines of the state of Virginia, but who are not residents of Virginia. Seen in this light, Rule 1A:1(c) operates as a discrimination solely against nonresidents who are otherwise committed to practicing law in the state of Virginia.

Because the Virginia rule incorporates a requirement that attorneys be committed to practicing full-time within Virginia, the rule places a "net burden" on nonresidents instead of residents. The Seventh Circuit reasoned that nonresident applicants to the state bar were undoubtedly proposing to supplement their existing practice, but Virginia's rule requiring full-time practice within the state prevents the drawing of that inference here. The challenged provision of the Virginia rule requires attorneys who are moving their practice to Virginia to give up their previous practice and take the Virginia bar examination if they choose to reside across the state line. The rule thus places a significant burden on nonresident citizens without, as distinguished from Illinois, offering them the benefit of an interstate practice.

## IV.

■ Based on the preceding analysis, this case involves a straightforward application of the two part test for scrutiny under Article IV, § 2. Under this test, discrimination against nonresidents is valid if: (1) there is a substantial reason for the difference in treatment; and (2) the discrimination bears a substantial relationship to the state's objective. *Piper, supra,* 470 U.S. at 284, 105 S.Ct. at 1279; *United Building & Construction Trades Council v. Mayor & Council of Camden,* 465 U.S. 208, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984). In deciding whether the discrimination bears a substantial relationship to the state's objective, we may consider the availability of less restrictive means to achieve that end. *Id. See, e.q., Toomer v. Witsell, supra.* 334 U.S. at 398–99, 68 S.Ct. at 1163–64.

■ We conclude that the Virginia Rule fails to survive the scrutiny which this test imposes. Virginia suggests two reasons to justify the different treatment which it accords to residents and nonresidents seeking admission on motion. First, Virginia argues that the requirement of a bar examination furthers the state goal of enhancing the quality of legal practitioners in the state. The Court in *Piper* unequivocally rejected this rationale insofar as it seeks to justify discrimination against nonresident

attorneys.[6] Certainly we perceive no nexus between residence and lawyer competence and Virginia points to none.

Virginia also argues that the residency requirement facilitates compliance with the requirement that an attorney must intend to practice full-time in Virginia, as required by Rule 1A:1(d) because a resident of Virginia is more likely to comply with this commitment than a nonresident. Virginia has established no enforcement machinery to monitor compliance with its full-time practice requirement. Its argument thus boils down to the assertion that residents are more likely to honor their commitment to practice full-time in Virginia than are non-residents. Virginia offers no evidence to support this argument, and its logic is tenuous. In agreement with the district court we do not think that it is more likely that a resident will be more truthful than a non-resident in stating his intention, or in carrying out his commitment, to practice full-time in Virginia. As a result, we think that this objective cannot survive scrutiny.

Thus, we conclude that the Virginia rule is overbroad because it penalizes nonresident attorneys even though they are not more likely than resident attorneys to be untruthful about their intention to practice full-time in Virginia. As the plaintiff suggests, a less restrictive alternative available to the state would be to require attorneys to renew each year their promise to practice full-time in Virginia. A rule requiring a renewed commitment to full-time practice would ensure that attorneys, the majority of whom do presumably subscribe to the basic canons of ethics, would be reminded of the commitment which they agreed to fulfill. This alternative would have the same beneficial effect on compliance with Virginia's full-time practice requirement as the current rule, without placing special burdens on the citizens of the several states.

Moreover, Virginia's requirement that applicants maintain an office in Virginia renders redundant the Rule's requirement that an applicant maintain a permanent residence in the state. If an office is to be maintained in Virginia, it is likely that most nonresidents will live in places reasonably convenient to Virginia. In fact, the office requirement adopted by the Virginia Supreme Court facilitates compliance with the full-time practice requirement in nearly the identical manner as the residency requirement because it ensures that an attorney will maintain a tangible in-state presence and interest in the laws of the state which is roughly equivalent to the commitment that results from in-state residence. Thus, the requirement that an attorney maintain an office in the state achieves the very goal that is sought to be reached by the residency requirement of the current Rule; but, at the same time, the in-state office requirement does not subject citizens of the states neighboring Virginia to unfair discrimination. *Cf. Goldfarb v. Supreme Court of Virginia, supra,* 766 F.2d at 862–65 (full-time practice requirement of Virginia Rule 1A:1(d) does not constitute economic protectionism in violation of Commerce

6. In *Piper,* New Hampshire offered four justifications for its refusal to admit nonresidents to the bar, all of which were rejected as unreasonable justifications for such discrimination. The state in that case asserted that nonresident members would be less likely (1) to become familiar with local rules and procedures; (2) to behave ethically; (3) to be available for court proceedings; and (4) to do pro bono and other volunteer work in the state. 470 U.S. at 285, 105 S.Ct. at 1279.

The Court found that there was no evidence to support the State's claim that nonresidents were less likely to acquaint themselves with local rules and procedures and found the prospect unlikely because of the attorney's interest in zealously protecting the interests of her client. *Id.* The Court rejected the State's second justification because there is no reason to believe that nonresident lawyers are less ethical than attorneys who are residents of New Hampshire. *Id.* The State's third justification was rejected in *Piper* because the Court reasoned that a high percentage of lawyers who take the bar examination would be committed to residing in places reasonably convenient to the state. In addition, less restrictive means were available to the State to protect its interests, such as requiring distant counsel to retain a local attorney in individual cases. *Id.* at 287, 105 S.Ct. at 1280. Finally, the Court rejected the suggestion that nonresident attorneys would be less likely to engage in pro bono work because most attorneys who would become members of the state bar would endeavor to perform their share of these services and because the less restrictive alternative of requiring such volunteer representation was available. *Id.*

Clause). While it may be argued that reliance on the presence of an office in the state to enforce the full-time practice requirement would permit attorneys to evade the Rule by establishing a sham office in order to have a mailing address within Virginia, it is equally true that an attorney seeking to evade the current Rule may just as easily establish a sham residence within the confines of the state.

Finally, we agree with the plaintiff that Virginia could assure compliance with the full-time practice requirement if it were combined with a rule requiring annual renewals of an attorney's affidavit stating that he maintains an office in Virginia, in addition to practicing full-time within the state. This would be a far less drastic alternative than the current residency requirement.

### IV.

The Plaintiff also contends that the Virginia Rule violates the Equal Protection Clause and the Commerce Clause. In view of our conclusion about the Privileges and Immunities Clause, we need not consider these issues.

AFFIRMED.