Anthony J. SESTRIC,
Plaintiff-Appellant,

v.

William G. CLARK, et al.,
Defendants-Appellees.

No. 84–2298.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 28, 1985.

Decided June 18, 1985.

As Amended on Denial of Rehearing and
Rehearing En Banc Aug. 1, 1985.

Anthony J. Sestric, St. Louis, Mo., for plaintiff-appellant.

Patricia Rosen, Ill. Atty. Gen. Office, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, and CUDAHY and POSNER, Circuit Judges.

POSNER, Circuit Judge.

The appellant, Anthony Sestric, is a member of the Missouri bar living and practicing law in St. Louis. He brought this suit against the responsible Illinois officials to invalidate, primarily on federal constitutional grounds, the requirement that a nonresident who wants to practice law in Illinois pass the Illinois bar exam. If Sestric became a resident of Illinois, he could be admitted to the Illinois bar on motion, without taking the bar exam. St. Louis is just across the Mississippi River from Illinois, and Sestric would like to practice law in Illinois without moving to Illinois and without taking the Illinois bar exam. Although his complaint was dismissed on the defendants' motion for summary judgment, he does not argue that the factual record is insufficient to resolve the issues he has raised on appeal.

Sestric bases his case on the privileges and immunities clause of Article IV of the Constitution ("The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States"), and also on the better-known commerce and equal protection clauses. (His additional claim, that the refusal to admit him violated Illinois law, clearly has no merit, for the reasons stated by the district judge.) If the privileges and immunities clause could be viewed as a general guaranty against discrimination by states against nonresidents, then it and the commerce clause—viewed not as a grant of power to Congress but as a prohibition against state action inconsistent with free trade among the states (the "negative" or "dormant" commerce clause)—would occupy the same ground, and we would not have to discuss both clauses. As a matter of fact the framers of the Constitution may have intended the privileges and immuni-

ties clause to play the role that has come to be associated more with the "negative" commerce clause. See Eule, *Laying the Dormant Commerce Clause to Rest*, 91 Yale L.J. 425, 447–48 (1982). But almost 200 years of judicial interpretation have opened up a wedge between the two clauses. For example, the privileges and immunities clause has been held not to protect corporations. See, e.g., *W.C.M. Window Co. v. Bernardi*, 730 F.2d 486, 492–93 (7th Cir.1984). A more pertinent example is that it has been held not to protect the full range of activities in which nonresidents might engage. See, e.g., *Baldwin v. Montana Fish & Game Comm'n*, 436 U.S. 371, 388, 98 S.Ct. 1852, 1862, 56 L.Ed.2d 354 (1978) (elk hunting by nonresidents of Montana). So we shall have to address the plaintiff's commerce clause contentions separately (though briefly), and also his equal protection contentions; but we shall begin with privileges and immunities.

Illinois does not require that members of its bar be residents of the state—a requirement that the U.S. Supreme Court held, after argument in this case, violates the privileges and immunities clause. See *Supreme Court of New Hampshire v. Piper*, —— U.S. ——, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985). A nonresident can get admitted to the Illinois bar by passing the Illinois bar exam and satisfying the usual ethical requirements. Nonresidents more than six years out of law school, like the plaintiff, used to be denied this right; but that exclusion, the focus of the plaintiff's challenge in the district court, was rescinded while the appeal in this case was pending. See Rule 703 of the Illinois Supreme Court (Sept. 14, 1984). Though it was not till his reply brief in this court that Sestric redirected his attack to the requirement that he sit for the bar exam, the rule change that ended the exclusion of nonresident lawyers who were more than six years out of law school came after he filed his brief; so he is not subject to criticism for having changed his theory when he did. We could remand the case to the district court to consider the new theory before we do, but since it raises only pure issues of law and the district judge who decided the case has died, the delays involved in a remand would not be justified.

If Sestric moved to Illinois he would be excused from having to take the Illinois bar exam, provided he had practiced continuously for five of the last seven years in a jurisdiction to whose bar he had been admitted, Ill.S.Ct.R. 705, as Sestric has (we shall call this the "continuous practice" requirement). Therefore he is treated less favorably than a class of (new) Illinois residents. This difference is the basis of Sestric's present claim under the privileges and immunities clause. Whether such a difference violates the clause, or any other provision of the Constitution, is one of first impression at the federal appellate level, although the Massachusetts Supreme Court has held a similar regulation to be in violation of the clause. *In re Jadd*, 391 Mass. 227, 236–37, 461 N.E.2d 760, 765–66 (1984). Several decisions, one by this court, uphold the constitutionality of continuous-practice requirements. See *Lowrie v. Goldenhersh*, 716 F.2d 401 (7th Cir. 1983); *Salibra v. Supreme Court of Ohio*, 730 F.2d 1059, 1062–64 (6th Cir.1984); *Shapiro v. Cooke*, 552 F.Supp. 581 (N.D.N.Y. 1982), aff'd on the district court's opinion, 702 F.2d 46 (2d Cir.1983) (per curiam). And *Hawkins v. Moss*, 503 F.2d 1171 (4th Cir.1974), upholds the denial of the continuous-practice exemption to a lawyer whose state of licensing does not reciprocate the exemption. Although none of these cases is directly in point, since the plaintiffs were residents complaining about a requirement that Sestric (a nonresident) satisfies, all contain dicta which cast doubt on the validity of Sestric's claim. For example, we said in *Lowrie* that "there is no residency requirement preventing Lowrie from taking the Illinois bar examination in the first instance. The years of practice and residency requirement at issue in this case prevent Lowrie from being admitted to the Illinois bar *without examination*. It is primarily for this reason, as well as on the ground that we are unable to, as amicus

curiae does, ascribe to the Illinois Supreme Court a motive of discouraging out-of-state lawyers from migrating to Illinois, that we find the [amicus's] Privileges and Immunities Clause contentions devoid of merit." 716 F.2d at 414 (emphasis in original). See also 730 F.2d at 1063, 1065; 503 F.2d at 1176–80; 552 F.Supp. at 587–88. *Lowrie* also suggests, it is true, that the practice of law is not one of the privileges protected by the privileges and immunities clause, see 716 F.2d at 414—a proposition that, after *Piper*, can no longer be maintained. See 105 S.Ct. at 1277. But as the passage quoted above makes clear, this was not our primary ground for rejecting Lowrie's privileges and immunities claim.

In any event, *Piper*, though it is, as we shall see, distinguishable from this case, requires us to take a fresh look at the issue, and not just rest on dicta in lower-court decisions, our own or others'. The Supreme Court stated in *Piper* that discrimination against a nonresident who wants to practice law violates the privileges and immunities clause unless "(i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective. In deciding whether the discrimination bears a close or substantial relationship to the State's objective, the Court has considered the availability of less restrictive means." *Id.* at 1279 (citation and footnote omitted). This is a tough test to pass, but before applying it to the "discrimination" of which Sestric complains we must ask whether the Supreme Court intended the test to apply to such a claim. Sestric's claim is different from Piper's. It is not clear that Sestric has been deprived of a privilege or an immunity within the meaning of the clause or that he is the victim of a discrimination in favor of residents and against nonresidents—or indeed that there is any discrimination between any two groups. Thus he may not even have a prima facie claim under the privileges and immunities clause, or he may have a claim more easily rebutted than Piper's.

In the usual privileges and immunities case a state conditions a substantial opportunity or "privilege"—such as, in *Piper* itself, the practice of law—on the status of being a resident of the state. Thus in our *Bernardi* case, or in *Hicklin v. Orbeck*, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978) (the "Alaska Hire" case), only residents could be hired to work on certain projects in the state unless there were no residents qualified to do the work. Illinois does nothing like that regarding the practice of law. Although it requires nonresidents to take a bar exam, it requires the same of all residents except new residents who have practiced law continuously for five of the last seven years in a state in which they are licensed. The privilege that Sestric has been deprived of is not the privilege of practicing law in Illinois; nonresidents can practice law in Illinois provided that, like (most) residents, they pass the bar exam. He has been deprived of the "privilege" that some new residents have of being allowed to practice law without taking the bar exam. Maybe the case is really closer to *Baldwin v. Montana Fish & Game Comm'n, supra,* than to *Piper* —at least at a deeper level of analysis than one that notes that *Baldwin* is about hunting and *Piper* about lawyering.

Put differently, if practical exclusion from a socially marginal activity such as hunting elk is not within the scope of the privileges and immunities clause (the nonresident license fee was as much as 25 times higher than the resident license fee, see 436 U.S. at 374, 98 S.Ct. at 1855), maybe neither is the inconveniencing, as distinct from exclusion, of a nonresident seeking to engage in a vital calling such as law. Granted, the exclusion need not be absolute to be actionable under the privileges and immunities clause, though it was in *Piper*. A prohibitive condition, such as the nonresident license fee in *Toomer v. Witsell*, 334 U.S. 385, 395, 68 S.Ct. 1156, 1161, 92 L.Ed.2d 1460 (1948), that was 100 times the resident license fee, will do. See also *Ward v. Maryland,* 79 U.S. (12 Wall.) 418, 20 L.Ed. 449 (1871), where, as in *Baldwin,* the maximum difference was 25 times.

In *Bernardi* and *Hicklin* nonresidents were eligible for the jobs in question provided there were no qualified residents. But in all these cases the tendency was to exclude most nonresidents. It is a matter of conjecture whether the requirement of taking and passing a bar exam would actually exclude many lawyers having a serious desire to conduct a substantial practice in Illinois; and the exclusion of those having no such desire would not do much damage to the policy of the privileges and immunities clause.

■ The other respect in which this case breaks the mold of previous privileges and immunities cases is that it does not involve a clear-cut preference for residents, most of whom of course have to take the bar exam too; it is a preference for new residents over both old residents and nonresidents. As a matter of fact, the elimination of the preference of which Sestric complains could harm new residents without helping nonresidents. This can be seen by imagining that Illinois bowed to Sestric's view of his rights under the privileges and immunities clause by requiring everyone— old resident, new resident, nonresident— wanting to practice law in Illinois to take the bar exam. As of course it could do: "Our holding in this case does not interfere with the ability of the states to regulate their bars. The nonresident who seeks to join a bar, unlike the *pro hac vice* applicant, must have the same professional and personal qualifications required of resident lawyers." *Supreme Court of New Hampshire v. Piper, supra,* 105 S.Ct. at 1278 n. 16. See also *In re Gordon,* 48 N.Y.2d 266, 273, 42 N.Y.S.2d 641, 645, 397 N.E.2d 1309, 1313 (1979). Few states want to admit to their bars every lawyer admitted in one of the other 49 states. To avoid this a state need only, under Sestric's view of privileges and immunities, require every lawyer who wants to practice in the state to take the state's bar exam. Such a rule would bear harder on nonresidents as a class than the rule that Sestric challenges, by making it more costly for them to become residents. Though clearly constitutional, such a rule would not help Sestric or any other

nonresident; it would just hurt recent non-residents (= new residents).

This suggests that there is something amiss with Sestric's claim. And, indeed, even at the purely verbal level of constitutional interpretation a nonresident's complaint about a burden (taking the bar exam) that also rests on many residents (all but new residents) does not fit the privileges and immunities clause comfortably. The clause speaks of the privileges and immunities "of Citizens in the several States," and in this case it may be asked: which citizens of Illinois—old ones or new ones—provide the measure of Sestric's rights? There is also a substantial argument of policy. If (unlike the present case) the State of Illinois, while allowing nonresidents to practice law if they passed the bar exam, allowed any resident to practice law without having to pass the bar exam, it would be discriminating in favor of residents and against nonresidents. There would be a suspicion that the discrimination was unjustified—a needless though far from insurmountable obstacle to interstate mobility of lawyers—because the burden would be borne by nonresidents, who have no voice in the public policy of the state. Cf. *Toomer v. Witsell, supra,* 334 U.S. at 396, 68 S.Ct. at 1162. (True, residents would be diffusely hurt as consumers of legal services; but no resident lawyer would be hurt.) But the State of Illinois does not excuse all or even most residents from having to pass the bar exam in order to practice law in Illinois. It requires all old residents, some new residents (those who do not satisfy the continuous-practice requirement), and non-residents alike to pass the bar. The fact that the same burden is placed on both resident and nonresident groups provides some assurance that it is a moderate and reasonable, rather than arbitrary and prohibitive, burden. In the battle of the footnotes between the majority and dissenting opinions in *United Building & Construction Trades Council v. Mayor & Council of City of Camden,* 465 U.S. 208, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984), a case nominally involving a discriminatory city ordinance

rather than a state law, it was common ground that the effect on state residents of an alleged discrimination against nonresidents was relevant to evaluating the privileges and immunities claim. Compare *id.* at 1027 n. 9 (majority opinion) with *id.* at 1034–35 and n. 12 (dissenting opinion).

■ Discrimination against new residents has been a frequent target of constitutional attack; one has only to recall *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), where the Supreme Court held that states could not deny welfare benefits to new residents. If as in this case a state favors new residents, there is a presumption that what it is doing is proper. "[A] State may make residence within its boundaries more attractive by offering direct benefits to its citizens in the form of public services, lower taxes than other States offer, or direct distributions of its munificence. Through these means, one State may attract citizens of other States to join the numbers of its citizenry. That is a healthy form of rivalry...." *Zobel v. Williams*, 457 U.S. 55, 67–68, 102 S.Ct. 2309, 2316–2317, 72 L.Ed.2d 672 (1982) (concurring opinion). Although this was said in an equal protection case, we cannot think why the same thing should not be true in a privileges and immunities case as well. (*Zobel* has additional significance for this case: it held that preferring old over new residents was not forbidden by the privileges and immunities clause. See *id.* at 59 n. 5, 102 S.Ct. at 2312 n. 5. Here Illinois has preferred a class of new residents over both old residents and nonresidents.) Moreover, by allowing lawyers who move to Illinois to be admitted to the Illinois bar without taking the bar exam only if other states accord the same privilege to Illinois lawyers who move to other states (the practice known as "reciprocity," on which see, e.g., Ill.S.Ct.R. 705(b); *Hawkins v. Moss, supra; Ricci v. State Bd. of Law Examiners*, 427 F.Supp. 611, 618 (E.D.Pa.1977), vacated on other grounds, 569 F.2d 782 (3d Cir.1978) (per curiam)), Illinois eases the flow not only of new lawyers into Illinois but also of Illinois lawyers into other states. The rule that Sestric challenges promotes interstate mobility, at least when defined to include the relocation of citizens to new states as well as the provision of goods and services by nonresidents.

Not only has Illinois not denied a privilege to nonresidents that is generally available to residents, but it may not have imposed a net burden on nonresidents even compared to the favored resident group—the new residents. The Florida lawyer (say) who by moving to Illinois can be admitted to the Illinois bar without having to take the Illinois bar exam would probably be giving up his Florida practice. He would not have to give it up, but even today most lawyers have a local rather than multistate practice, and therefore most lawyers who change states abandon their former practice. If he had remained in Florida and sought admission to the Illinois bar as a nonresident, he would have to take the bar exam, but on the other hand he would be retaining his Florida practice; he would not stay in Florida if he wanted to practice law full-time in Illinois. Thus, though he would have taken (so far in his professional lifetime) two bar exams, he would have done so in order to practice in two states, not in one state as in our first example. Sestric does not propose to give up his Missouri practice for an Illinois practice. He wants to practice in both states though he has passed only one bar. If allowed to do this he will be better off than a lawyer who pulls up stakes in Missouri and relocates to Illinois. Of course if that lawyer retains his Missouri practice, as he could do since he would still be a member of the Missouri bar, his position would be symmetrical with what Sestric is seeking for himself. But as is usually the case in law, we are dealing with probabilities rather than certainties. A person who moves to another state is unlikely to have a multistate practice, while a person who applies for admission to a state's bar as a nonresident must be seeking to have at least a two-state practice. It is not obviously unreasonable to make him take a second bar exam.

█ Because Illinois has not barred nonresidents from practicing law, has not discriminated against residents in gross, and may not even have imposed a net burden on nonresidents compared to the small class of favored residents, Sestric has failed to make out a prima facie case under the privileges and immunities clause. But since we shall have to consider Illinois' justification for the challenged rule under the equal protection clause, we shall (after doing so) return to the issue of privileges and immunities and show that, even if we are wrong and Sestric has made out a prima facie case under the privileges and immunities clause, Illinois has rebutted it.

█ As we cannot say that Illinois' rule is more likely to impede than to increase the interstate mobility of lawyers, it is apparent that Illinois has not violated the commerce clause. A state may not place unreasonable burdens on free trade among the states; and among the markets that the states must not attempt to balkanize through tariffs or regulation are labor markets, see, e.g., *W.C.M. Window Co. v. Bernardi, supra*, 730 F.2d at 493–96, including the market for legal services. But, as we have seen, far from having placed an unreasonable burden on the interstate mobility of lawyers, Illinois may well have increased that mobility.

It is true that explicitly reciprocal trade barriers have been knocked down under the commerce clause, see, e.g., *A & P Tea Co. v. Cottrell*, 424 U.S. 366, 378–79, 96 S.Ct. 923, 931–32, 47 L.Ed.2d 55 (1976); they are in effect retaliatory tariffs. But despite the reciprocity provision in Illinois Supreme Court Rule 705(b), Illinois has not created a barrier to nonresident lawyers and then offered to remove it if other states do likewise. The bar exam is a condition for admission to the bar imposed on residents and nonresidents alike; the waiving of the condition for a class of new residents merely makes it easier for lawyers to change states.

█ The plaintiff's real objection, as it seems to us, is not that the Illinois rule keeps him, as a nonresident, from practicing law in Illinois but that it creates an arbitrary distinction between experienced new residents and equally experienced nonresidents by excusing the former from the bar exam required of the latter. This is a claim most naturally assessed under the equal protection clause of the Fourteenth Amendment. One response, already suggested, is that there is no discrimination— no (net) difference of treatment between persons similarly situated. But if there is, it is a rational discrimination, and that is all the justification that the equal protection clause requires for such a distinction. *Schware v. Board of Bar Examiners*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957); *Lowrie v. Goldenhersh, supra*, 716 F.2d at 408–09; *Shapiro v. Cooke, supra*, 552 F.Supp. at 586.

The plaintiff is claiming a right to practice law in Illinois without being a resident and without taking a bar exam. There can be no assurance that he knows Illinois law well enough to represent clients in Illinois competently. Although there might seem to be no greater assurance regarding lawyers who move to Illinois and are admitted without having to take a bar exam, they at least are making a greater commitment to the state. By becoming residents of Illinois they place themselves in a situation where in all likelihood the bulk of their clients will be Illinois clients; the bulk of the law they practice will be Illinois law; and they will learn through doing. (Of course this is not so in every case; some Illinois lawyers, especially in the large firms in Chicago, have a federal or multistate rather than Illinois practice.) A nonresident who practices law in Illinois might do so on a most intermittent basis. He has not made the commitment entailed in becoming a resident. The focus of his practice being elsewhere, his incentive to master Illinois law is less than that of a resident who expects to practice Illinois law full time. Taking and passing the bar exam is thus a substitute commitment for residence; it forces the nonresident to bone up on Illinois law. And it is a far less burdensome commitment than moving into

the state. To make a person change his state of residence to demonstrate that he is serious about practicing the state's law is, the Supreme Court held in *Piper,* too burdensome. But Sestric is complaining not about the burdens of the bar exam but about what he contends is the unfair advantage that new residents have over him in being excused from having to take the bar; and they are excused only because they have borne the much greater burden of relocating their home and (in all likelihood) their practice to a new state.

Of course one can find—and readily, too—holes in Illinois' defense to the charge of undue favoritism to new residents:

1. It has long been argued that bar exams test skill in "cramming," rather than knowledge of state law, and that by never reexamining those who are admitted to the bar a state gives no protection against the loss of legal skills through disuse or forgetting. But this argument is too powerful. It is an argument against ever making the bar exam a condition of admission to the bar. The universality of the requirement makes this a dubious argument. (In contrast, in *Piper* the Supreme Court pointed out that a number of states —including, of course, Illinois—had stopped requiring residence as a condition of admission to the bar. See 105 S.Ct. at 1275 n. 5.) So does the fact that the courts have upheld the requirement against repeated contentions that it unreasonably discriminates against the members of some minority groups or deprives persons of their liberty of occupation without due process of law. See, e.g., *Poats v. Givan,* 651 F.2d 495 (7th Cir.1981) (per curiam); *Whitfield v. Illinois Bd. of Law Examiners,* 504 F.2d 474, 477 (7th Cir.1974) (per curiam); *Attwell v. Nichols,* 608 F.2d 228, 230 (5th Cir.1979) (per curiam); *Tyler v. Vickery,* 517 F.2d 1089, 1101–03 (5th Cir. 1975).

2. A lawyer might move to Illinois, become a member of the Illinois bar without taking the bar exam, and a few weeks later leave Illinois, so that although he would remain a member of the Illinois bar his situation would be realistically the same as that of a nonresident lawyer. But such cases are rare. Although the word "resident" is a chameleon, see, e.g., *Lister v. Hoover,* 655 F.2d 123, 128 (7th Cir.1981) (per curiam), the usual meaning in Illinois law as in other states' law is "domiciliary." See *Fagiano v. Police Bd. of City of Chicago,* 98 Ill.2d 277, 74 Ill.Dec. 525, 456 N.E.2d 27 (1983). And although the word is not defined in Rule 705, subsection (d) does require that the applicant be an "actual resident," the same as the ordinance in *Fagiano,* and that he certify "that upon admission to the bar he will actively and continuously engage in the practice of law in" Illinois. So we may take it that for purposes of the rule "residence" implies an intent to remain indefinitely. See also *Hicklin v. Orbeck, supra,* 437 U.S. at 522 n. 5, 98 S.Ct. at 2485 n. 5. Indefinite is not permanent; but if the lawyer left the state after a few years rather than a few weeks, he would have as good a grounding in Illinois law as a nonresident who had taken the bar exam. In any event, we do not think Illinois' justification must fail merely because we can imagine cases to which it would be inapplicable. Although *Piper* pointed out that New Hampshire's residence requirement was "underinclusive ... because it permits lawyers who move away from the State to retain their membership in the bar," 105 S.Ct. at 1279, and the Illinois rule is similarly underinclusive, we do not read *Piper* to hold that underinclusiveness is a fatal weakness of a rule (which was not before the Court) that does not forbid nonresidents to practice law but merely requires them, like old residents, to take the bar exam. And an underinclusive rule is not necessarily unreasonable, which is the test under the equal protection clause.

3. There are alternative methods to the bar exam for assuring that nonresidents know enough local law to practice competently, such as "a continuing practice requirement measured by a minimum volume of local work per year," "mandatory continuing legal education for all licensed attorneys," and "periodic reexamination of

all admitted attorneys for general competency or for certification in areas of specialty." Hafter, *Toward the Multistate Practice of Law Through Admission by Reciprocity*, 53 Miss.L.J. 1, 41 (1983) (footnotes omitted). No doubt a stiff fee would winnow out the fly-by-nighters. The problem is that any of these alternatives could easily be more burdensome, more exclusionary, than the bar exam; it all depends on the specifics. See, e.g., Brakel & Loh, *Regulating the Multistate Practice of Law*, 50 Wash.L.Rev. 699, 712 (1975). We thus are not sure that there is a less restrictive alternative to the bar exam, or at least that the courts can determine its existence reliably.

4. The economic analysis of professional licensure in general, see, e.g., Friedman, Capitalism and Freedom 137–60 (1962); Stigler, *The Theory of Economic Regulation*, 2 Bell J. Econ. & Management Sci. 3, 13–17 (1971); Occupational Licensure and Regulation (Rottenberg ed. 1980); Shepard, *Licensing Restrictions and the Cost of Dental Care*, 21 J.Law & Econ. 187 (1978), and of the licensing of lawyers in particular, see, e.g., Pashigian, *Occupational Licensing and the Interstate Mobility of Professionals*, 22 J.Law & Econ. 1 (1979), teaches that the licensing of lawyers is an anachronism, or worse; that a free market in legal services will yield the optimal quality at the optimal price; and that a bar exam, administered once in a lawyer's lifetime, gives no assurance of minimum quality over the lawyer's professional lifetime—and indeed has no other purpose than to limit the number of lawyers and hence keep the prices of their services up. One who is persuaded of these theses will doubt that Illinois should be allowed to make anyone take a bar exam—even a lawyer from Hawaii who has one piece of business in Illinois every decade but wants to tell his clients that he is qualified to practice law in every state. Although having to pass a bar exam would indeed discourage such birds of passage, skeptics of lawyer licensing will argue that all that is important (if that—maybe the discipline of the market is enough) is that the lawyer be subject to discipline by the state, as any member of the Illinois bar is no matter where he lives. But we do not think that the equal protection clause ordains in effect a national bar, whereby admission to one state's bar is admission to every other's unless the other state refuses to admit new residents on the basis of their license in the state where they have practiced continuously for a period of time in the recent past. A majority of states, and the District of Columbia, allow admission of new residents on the basis of practice in another state. See American Bar Ass'n, Comprehensive Guide to Bar Admission Requirements 30–31 (1984) (Chart VIII). If Sestric's claim prevails, these states will have to decide whether to end this privilege or stand willing to admit on motion most lawyers in the country.

The Supreme Court has said that the high costs of information that many clients face in choosing among lawyers and monitoring the performance of the lawyer they have chosen justify the states in regulating the advertising of legal services with an even freer hand than the First Amendment allows government in regulating the advertising of ordinary goods and services. See *Bates v. State Bar of Arizona*, 433 U.S. 350, 383, 97 S.Ct. 2691, 2708, 53 L.Ed.2d 810 (1977) ("because the public lacks sophistication concerning legal services, misstatements that might be overlooked or deemed unimportant in other advertising may be found quite inappropriate in legal advertising"); *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460–61, 98 S.Ct. 1912, 1920–21, 56 L.Ed.2d 444 (1978). Thus the states have been held to have a legitimate interest in regulating the quality of legal practice, and it is not an irrational method of regulation to make nonresident lawyers take the state's bar exam—even though they have already taken a bar exam and practiced law in another state—while excusing new residents from having to take it.

■ This is enough to show that the challenged rule does not deny Sestric the equal protection of the laws, even if (as we

have questioned) there was any discrimination; and it is enough to rebut a prima facie case under the privileges and immunities clause, if contrary to our earlier conclusion Sestric has made out a prima facie case. If he has succeeded in showing a "discrimination" within the meaning of that clause, still it is not such a discrimination as would warrant the application of so stringent a test of legality as that applied in *Piper* to a much starker discrimination in favor of residents. The less serious a discrimination is, the less ought to be required to justify it. See *Toomer v. Witsell, supra,* 334 U.S. at 396, 68 S.Ct. at 1162 ("the inquiry in each case must be concerned with whether such reasons [for the difference in treatment] do exist and whether the *degree* of discrimination bears a close relation to them") (emphasis added and footnote omitted).

■ Although the cases discuss issues under the privileges and immunities and commerce clauses separately, reflecting the historical divergence in the interpretation of these closely related provisions, we do not find in the cases the expression of a desire to set a higher standard for justifying the identical "discrimination" when it is challenged under the privileges and immunities clause than when it is challenged under the commerce clause. Indeed, when the discrimination is within the scope of both clauses, the courts typically cite decisions under either interchangeably. See, e.g., *Hicklin v. Orbeck, supra,* 437 U.S. at 532–34, 98 S.Ct. at 2490–92. In deciding a case under the commerce clause, the court examines both the gravity of the interference with free interstate trade and the justifications offered for it, to see whether the burden is an unreasonable one in the circumstances. Naturally if the state law is obviously protectionist it is struck down without much hesitation—the gap between interference and justification is widest. If the regulation is apparently evenhanded, it is struck down only if "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d

174 (1970); see also *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 471–72, 101 S.Ct. 715, 727–28, 66 L.Ed.2d 659 (1981). Here we have something intermediate—a regulation not totally evenhanded, because it singles out a group of new residents for favored treatment, but certainly not nakedly protectionist.

■ Where, as in *Piper* (had it been brought as a commerce clause case), the interference with free trade consists of totally barring nonresidents from a trade or calling, the burden of justification is great. Where the interference is small and maybe nonexistent (we said earlier that the Illinois rules actually increase the interstate mobility of lawyers, but here we are concerned with the standard of justification—if justification were necessary), a lighter burden of justification is appropriate. This is so whether the challenge is cast in privileges and immunities terms or in commerce clause terms. The two clauses are part of the same document, drafted by very intelligent and careful men; why would they have wanted the same discrimination against nonresidents to be tested by a different standard, depending on which clause was cited in the complaint? We do not read *Piper* to create such a distinction. The rigorous test of justification that it lays down is designed for cases where a trade or calling is confined to residents, and that is not this case.

■ But if all this is wrong we still think Sestric must lose, because Illinois' rule passes even the test in *Piper.* The requirement of taking and passing the bar exam must be regarded, in light of its universality, as having a "close or substantial" relationship to a state's legitimate objective of keeping up the quality of its bar. While alternative methods of keeping up that quality can easily be imagined, it is not clear, as we have said, that they would be any less restrictive than the bar exam. Constant judicial policing might be necessary to ensure that they were less restrictive. We might see the emergence of a judge-made counterpart to the Equal Employment Opportunity Commission's guidelines for tests and other methods of selecting employees. See 29 C.F.R. Part 1607.

The biggest shadow cast on Illinois' rule is that it excuses new residents from taking the bar. How important to the quality of legal practice can the requirement of taking and passing the bar be if new residents are excused? But as we noted, the act of pulling up stakes in one state and relocating to another establishes a commitment to the new state—a commitment to learning its law and practicing that law competently—that is missing when a nonresident seeks admission to the bar of the state.

As the last point suggests, Sestric's appeal is a challenge to the widespread practice of bar reciprocity, which typically favors (though perhaps superficially, as we have seen) new residents over nonresidents. The alternatives to reciprocity are a national bar or no reciprocity at all. The former might be superior to the system we have in this country for regulating the bar. But it is not even clear that reversing the district court would bring us closer to the national bar, rather than just destroy reciprocity. And if it would do the former, still not every good thing is constitutionally required; we think this particular good thing (if it is a good thing) is not.

AFFIRMED.