**In the Matter of the Application for Admission to the Bar of Lindsay G. ARTHUR, Jr., Applicant,**

**Iowa State Bar Association, Intervenor.**

No. 86–1781.

Supreme Court of Iowa.

Nov. 25, 1987.

Lindsay G. Arthur, Jr., Minneapolis, Minn., pro se.

James E. Gritzner of Nyemaster, Goode, McLaughlin, Emery and O'Brien, Des Moines, for intervenor.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, CARTER and LAVORATO, JJ.

SCHULTZ, Justice.

Lindsay G. Arthur, Jr., an attorney from Minneapolis, Minnesota, seeks admission to practice law in this state without examination under Iowa Supreme Court Rules 114 and 115. Arthur is currently licensed to practice law in Minnesota and Wisconsin and has met the time of practice and character requirements of our rules. The issue confronting us is whether Arthur, who is not an inhabitant of Iowa, has demonstrated a bona fide intent to establish an office for the practice of law in this state, as required by our rules.

On September 12, 1986, this court denied Arthur's application for admission on motion because he had not demonstrated a bona fide intention to open an office for the practice of law in Iowa. We agreed to reconsider his application and granted his request for an oral hearing. The Iowa State Bar Association (Bar) was allowed to intervene. We appointed Paul E. Hellwege, senior judge, to act as a hearing officer and to make findings of fact to aid us in reconsidering the application. We received the briefs of the parties and have heard oral arguments.

Arthur maintains that he has demonstrated a bona fide intention to open an office for the practice of law in this state. He further claims that the office requirement of our rule violates the United States Constitution article IV, section 2. We disagree.

I. *Compliance with office requirement.* We prescribe terms and proofs for the admission to practice law in Iowa by rule. Rule 114 gives this court discretion to admit a lawyer to our bar without examination, provided certain requirements are met. At issue is the requirement that lawyers such as Arthur who are not inhabitants of the state prove an intent to open an office for the practice of law in Iowa. Rules 114(a), 115(4). The facts in this case, as stated below are undisputed.

Arthur is the senior partner in a Minneapolis, Minnesota, law firm where he specializes in insurance defense litigation. His clients have business in states surrounding Minnesota which Arthur would like to handle. He was admitted to the Wisconsin bar in 1983 and other members and associates of his firm are licensed in other states, including Iowa.

To support his contention that he intends to maintain an office in Iowa, Arthur points to a Des Moines law firm created, at his request, by two of his salaried associates, James Echtenkamp and Michael Quinlivan, who were admitted to practice in Iowa by examination. The firm Echtenkamp and Quinlivan (the firm), referred to as an "anomaly" by the hearing officer, is designed to promote the interests of Arthur's Minnesota law firm. Arthur testified that this "office" was originally intended, in part, to comply with an office requirement for the federal district court in Des Moines. The firm members receive no income from it and act at all times as associates of Arthur's firm. This firm's activity typifies the type of practice Arthur intends to have in Iowa.

The firm's Iowa "office" consists of the right to use office space in that portion of an office under the control of a former classmate of Quinlivan (lessor) who shares an office with other lawyers in Des Moines. The right to use space in lessor's office includes use of support staff. In exchange the lessor receives $100 per month and has a written agreement to act "of counsel" to the firm. Thus far, the lessor's only service has been to open and forward firm mail and he has not received any compensation other than the lease payments.

When the lessor changed office sites, the firm followed. The firm was never listed in the building directory of the first site and was not listed at the second site until after the hearing. The first office was used personally by firm members only to meet with the lessor and the second office has not been used personally at all.

The firm keeps no files in the Des Moines office, nor has it ever been listed in the telephone directory. Arthur states that the firm has no Des Moines business and does not wish to attract new business from the public. The firm has received mail at the Des Moines office and has recently ordered stationery with the Des Moines address. Recently, the firm opened a trust account.

In its two years of existence the firm has been involved in seven Iowa cases. In two cases the firm did not appear although it monitored the actions for its client in order to report on its exposure. In two cases it has associated local counsel. In three cases the Minneapolis address was used, but in one of these the Des Moines address was also used.

Arthur intends to practice law in Iowa with Echtenkamp and Quinlivan. The Bar takes the position that this arrangement does not qualify as an "office for the prac-

tice of law in Iowa" and falls far short of the necessary intent required.

■ It is our task to elaborate on the meaning of "intent to establish an office for the practice of law in Iowa." Rule 115(4). Arthur keys on the word "office," and argues that a place available to transact business is all that is required. We reject this "bricks and mortar" approach and prefer to also consider the qualifying language "for the practice of law in Iowa." We look to the intended use of the office and not merely availability of space. Consequently, an "office for the practice of law" is a place where an attorney practices, by being there personally a substantial and scheduled portion of time.

The office requirement, as we interpret it, is designed to insure the competency of lawyers in matters peculiar to Iowa law, practice and procedures. Admission by examination is one way to achieve this goal. An office requirement for those seeking to avoid the bar examination is another. Under Rules 114 and 115, an applicant demonstrates competency in general legal principles by proof of admission and practice in another state for a specified period. The ongoing and substantial physical presence contemplated by our office requirement insures this court that the applicant, out of necessity, will seek to become proficient in his or her knowledge of Iowa statutes, case law, and trial procedures. An applicant who does not intend to be present in the Iowa office for a substantial and scheduled period of time, servicing Iowa clients, lacks sufficient incentive to master those matters unique to Iowa law. Occasional forays into the state to service out-of-state clients do not provide this assurance. It was never our intent to admit applicants who have not shown that they will soon become proficient in those skills peculiar to practice in Iowa. We want to insure the competency of lawyers practicing in our state. Our rules, as we interpret them, achieve this objective.

■ The present office of Echtenkamp and Quinliven is merely a mail drop and is not the type of office contemplated by our rules. Arthur's associates maintain no con-

tinuing physical presence in Iowa and there is no indication that Arthur's practice in the state would be any different. Arthur candidly stated, in argument before this court, that he does not intend to come to Iowa to be behind a desk and wait for clients to come in, although he would be there to manage the business if the office practice was booming. Arthur has given no indication that he intends to become an active practitioner on a substantial or regular basis in an Iowa office, servicing Iowa clients. He has not satisfied the requirements of our rule.

■ II. *Constitutional claim.* Arthur further argues that to the extent our office requirement excludes him, it violates the privileges and immunities clause of the United States Constitution, article IV. Citing *Supreme Court of New Hampshire v. Piper,* 470 U.S. 274, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985), Arthur urges that our requirements for admission on motion unlawfully discriminate against nonresidents who wish to practice law in this state. *Piper* held that under the privileges and immunities clause a state may not restrict the practice of law to residents of that state. *Id.* at 288, 105 S.Ct. at 1280–81, 84 L.Ed.2d at 216. However, the Court also stated:

> "[L]ike many other constitutional provisions, the privileges and immunities clause is not an absolute." The Clause does not preclude discrimination against nonresidents where: (i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective.

*Id.* at 284, 105 S.Ct. at 1278–79, 84 L.Ed. 2d at 213 (citations omitted). The Court concluded that New Hampshire had not advanced a substantial reason for its residency requirement. *Id.* at 287, 105 S.Ct. at 1280, 84 L.Ed.2d at 215.

This case presents a different issue than *Piper.* In *Piper,* all nonresidents were barred from practicing law. In Iowa, nonresidents may practice law upon passing an examination or by meeting the require-

ments of Rule 114. Thus, while *Piper* is instructive, it is not dispositive.

A case decided after *Piper, Sestric v. Clark,* 765 F.2d 655 (7th Cir.1985), *cert. denied,* 474 U.S. 1086, 106 S.Ct. 862, 88 L.Ed.2d 901 (1986), is more on point to the present case. In *Sestric,* the court upheld a state scheme which required all nonresidents seeking to practice in Illinois to pass an examination, while allowing certain residents to be admitted on motion. *Id.* at 660–61. The court distinguished *Piper* and held that the privileges and immunities clause did not apply because the admission scheme did not discriminate between residents and nonresidents, but between a small class of new residents (those with the requisite prior experience) on the one hand, and the class of all other residents and nonresidents on the other hand.[1] *Id.* at 661.

A similar result was reached in *Sommermeyer v. Supreme Court of Wyoming,* 659 F.Supp. 207 (D.Wyo.1987), where the court granted summary judgment against a nonresident lawyer who was denied admission on motion to the Wyoming bar under a scheme similar to the one upheld in *Sestric.* The court, citing *Sestric,* reasoned that the attorney was not denied the right to practice law in Wyoming, but was only denied an alternative available to a small class of qualified new residents. *Id.* at 209. The court concluded that this alternative means of admission was not protected by the privileges and immunities clause and further reasoned that even if it was, the state interest in assuring competent legal representation was substantial enough to justify any burden the rule placed on nonresidents. *Id.* at 212.

One case, *Friedman v. Supreme Court of Virginia,* 822 F.2d 423 (4th Cir.1987), has held that the denial of admission on motion to nonresidents violates the privilege and immunities clause. However, the court distinguished *Sestric* because the Illinois rule did not require an intent to practice full-time in the state and was therefore less burdensome. *Id.* at 428.

Although we consider *Piper* and *Friedman,* we believe that the rationale of *Sestric* and *Sommermeyer* controls our resolution of the issue presented in this case. Not only are nonresidents allowed to practice in Iowa, but they are given an additional option for admission that was not available to the attorneys in *Sestric* and *Sommermeyer.* In Iowa nonresident attorneys may also be admitted on motion if they meet the office requirement of Rule 114. Our rule is broader than the rules upheld in *Sestric* and *Sommermeyer.* Mr. Arthur has not been denied a protected right.

Even if a protected right is involved our rules are still valid under privileges and immunities analysis. We have a substantial state interest in insuring the competency of lawyers in the state and our office requirement is directly tied to that interest. While dicta in *Piper* suggests that many of the state interests behind our rule are not substantial, it did so in the context of a straight residency requirement and for reasons peculiar to that type of rule. *See Piper,* 470 U.S. at 285–87, 105 S.Ct. at 1279–80, 84 L.Ed 2d at 214–15. We believe that in the present context substantial state interests exist for maintaining an office requirement. These are the same interests which justify a bar examination. The alternative to our present rule would be to require all persons seeking admission to take the bar examination.

In *Piper,* the Court held that a residency requirement was improper because the class of all nonresidents was not a peculiar source of the evils of low ethical behavior and unfamiliarity with local practice at which the rule was aimed.[2] *Id.* The same cannot be said of the class of nonresidents who do not intend to open an office. The

---

1. The court stated:

   Because Illinois has not barred nonresidents from practicing law, has not discriminated against residents in gross, and may not even have imposed a net burden on nonresidents compared to the small class of favored residents, Sectric has failed to make out a prima facie case under the privileges and immunities clause.

   *Sestric,* 765 F.2d at 661.

2. In this paragraph we consider nonresidents as a class rather than Arthur as an individual.

court in *Piper* addressed this concern. In rejecting the argument that nonresidents would be less likely to stay abreast of local law, the Court stated that given the burden of taking the bar exam and paying annual dues, it is likely that only those lawyers who anticipate "a considerable practice" in the state are likely to seek admission. *Id.* at 285, 105 S.Ct. at 1279, 84 L.Ed.2d at 214. We do not have an integrated bar with compulsory dues and admission on motion avoids the bar exam. An office requirement is our way of limiting admission to those lawyers who anticipate "a considerable practice" in Iowa.

We are deeply concerned about ethical behavior of our bar members and their familiarity with local practice. Cooperation between Iowa's voluntary bar association and this court in enacting reforms and in handling disciplinary matters has made us a national leader. We were the first in the nation to require auditing of lawyer's trust accounts and establishment of client security and trust funds. We were the second state to mandate continuing legal education of lawyers and judges, and among the first to use the interest from lawyer trust accounts to provide those less fortunate with free legal advice and access to the courts.

A recent study shows that the percentage of complaints which result in disciplinary action in Iowa is higher than any other state surveyed,[3] not because our lawyers are less ethical,[4] but because this court has placed the public interest where it should be. This benefits the public, as well as the honest and ethical lawyers. Our rules on lawyer advertising are also stringent and more restrictive than many jurisdictions. *See* Iowa Code of Professional Responsibility EC 2–10–13. We intend to maintain our present status as a leader in these areas.

Lawyers who wish to practice in the state only sporadically will have greater

difficulty meeting our high standards. Recent history bears this out. Twenty-six of the forty lawyers (or sixty-one percent) suspended for noncompliance with continuing legal education requirements over the past five years were nonresidents. Twenty-four of the forty-two lawyers (or sixty percent) suspended for non-compliance with our client security requirements were nonresidents. Out-of-state lawyers presently comprise approximately sixteen percent of the attorneys licensed in this state.

In privileges and immunities analysis the court must look to the availability of less restrictive means. Arthur does not suggest any less restrictive means for assuring the competence of nonresident lawyers than our present office requirement. We know of no less restrictive alternate that will protect the interests we seek to maintain.

In summary we find no violation of the privileges and immunities clause. If Arthur had established a prima facie case, we believe there is a substantial reason for the disparate treatment and such discrimination bears a substantial relationship to our objective.

APPLICATION DENIED.

All Justices concur except LARSON, J., who concurs in the result only.

---

**3.** National Organization of Bar Counsel, Operational Resources and Output of Disciplinary Agencies in the United States and Canada (Preliminary Report) 78 (1987). Iowa disciplined lawyers at the rate of 11.4 per 1,000 lawyers as compared with 7.5 of the second-place state and an average of 3.2. *Id.* The survey included

forty-six states, the Virgin Islands and three Canadian Provinces. The Virgin Islands disciplined attorneys at a rate of 36 per 1000. *Id.*

**4.** *Id.* In Iowa there were 60.1 complaints per 1,000 attorneys. The national average was 111.-6. *Id.*