In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-2527

CORRINE WIESMUELLER and
HEATHER R. DEVAN, on their own
behalf and that of all others similarly situated,

*Plaintiffs-Appellants,*

*v.*

JOHN KOSOBUCKI, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 07-cv-211-bbc—**Barbara B. Crabb**, *Chief Judge*.

ARGUED APRIL 7, 2009—DECIDED JULY 9, 2009

Before POSNER, RIPPLE, and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*. Wisconsin allows graduates of
the two law schools in the state (Marquette University
Law School and the University of Wisconsin Law School
at Madison) to be admitted to practice law in Wisconsin
without taking the Wisconsin bar exam. The plaintiffs,
and the class they represent (which has been certified),

are graduates of accredited out-of-state law schools who want to practice law in Wisconsin. They have sued members of the Wisconsin Board of Bar Examiners and the Supreme Court of Wisconsin, charging a violation of the commerce clause of Article I of the Constitution and seeking injunctive relief. They argue that the "diploma privilege" discriminates against graduates of out-of-state law schools who would like to practice law in Wisconsin. They appeal from the district court's grant of the defendants' motion to dismiss the suit for failure to state a claim.

Graduates of accredited law schools in states other than Wisconsin who would like to practice law in that state are at a disadvantage vis-à-vis graduates of Wisconsin's two law schools, because, unlike those graduates, to be admitted to the Wisconsin bar they have either to have practiced law for five years in another state or to have passed the Wisconsin bar exam. The amount of preparation required for taking the bar exam with a good chance of passing it is significant, and, for applicants who prudently enroll in a bar-review course, also costly. The ever-present risk of failing the bar exam and having therefore to retake it (perhaps repeatedly) imposes a further, contingent cost in time, money, and reputation. Such applicants also pay a higher fee for admission to the bar. And having to take the bar exam delays their admission to the bar (though not for as long as having to practice for five years in another state). It comes as no surprise that more than two-thirds of the lawyers in Wisconsin never took the Wisconsin bar exam, though an unknown number were excused from

having to take it because, rather than graduating from a Wisconsin law school, they had practiced law for at least five years in another state—in exile, as it were, from Wisconsin.

The defendants concede these points but argue that as a qualification for practice in the state the study of law in a Wisconsin law school is a reasonable substitute for passing the bar exam or for having practiced law for a significant period of time in another state. They also argue that the plaintiffs lack standing to sue because the only relief they seek is an injunction against three words in the rule of the Wisconsin Supreme Court that confers the diploma privilege on the graduates of the in-state law schools. We begin our consideration with that argument.

The rule provides, so far as bears on this case, that

> an applicant who has been awarded a first professional degree in law from a law school *in this state* that is fully, not provisionally, approved by the American bar association shall satisfy the legal competence requirement by presenting to the clerk certification of the board showing:
>
>> (1) Satisfactory completion of legal studies leading to the first professional degree in law. The law school shall certify to the board satisfactory completion of not less than 84 semester credits earned by the applicant for purposes of the degree awarded.
>
>> (2) Satisfactory completion of study in manda-tory and elective subject matter areas. The law

school shall certify to the board satisfactory completion of not less than 60 semester credits in the mandatory and elective subject matter areas as provided in (a) and (b). All semester credits so certified shall have been earned in regular law school courses having as their primary and direct purpose the study of rules and principles of substantive and procedural law as they may arise in the courts and administrative agencies of the United States and this state.

Wis. S. Ct. R. 40.03 (emphasis added). Subsections (a) and (b), to which Rule 40.03(2) refers, list standard law school courses. The rule makes no reference to Wisconsin law, and none of the listed course names has "Wisconsin" or any cognate in it.

The defendants argue that because all that the plaintiffs want by way of a judgment is an order expunging the three words that we have italicized, they would still be bound by subsection (2) and they have not contended that they satisfy its requirements. But the defendants err in assuming that the last sentence in subsection (2) ("All semester credits so certified shall have been earned in regular law school courses having as their primary and direct purpose the study of rules and principles of substantive and procedural law as they may arise in the courts and administrative agencies of the United States and this state") requires the study of *Wisconsin* law, or that the law schools that the plaintiffs and the members of their class have attended have less rigorous requirements than those imposed by the subsection. Indeed, so far as

appears, every class member could establish that his or her law school studies conformed to the requirements set forth in the rule except that the law school was in another state. Anyway the requirements of subsection (2) are applicable only to graduates of Wisconsin law schools, as the defendants concede and as is plain both from the wording of the rule (in particular the words "*the* law school") and from Wis. S. Ct. R. 40.02, which sets forth the qualifications for admission to practice in Wisconsin, including those applicable to persons who do not qualify for the diploma privilege. And this is further shown by Rule 40.02(2).

But the plaintiffs cannot be right that the Constitution requires Wisconsin to extend the diploma privilege to *all* graduates of *any* accredited law school in the United States, which would be the effect of just striking the three words. They overlook the fact that unequal treatment can be eliminated without conferring any benefit on the plaintiff that challenged it. If the diploma privilege is invalidated and in response Wisconsin requires all applicants for membership in the Wisconsin bar either to take the Wisconsin bar exam or to have practiced for five years in another state, the plaintiffs will be in the same position they're in now. Leveling down is a permissible form of compliance with a command to end unequal treatment. *Iowa-Des Moines National Bank v. Bennett*, 284 U.S. 239, 247 (1931) (Brandeis, J.); see also *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984); *Palmer v. Thompson*, 403 U.S. 217, 218 (1971).

But we do not know what exactly Wisconsin would do to comply with a ruling invalidating the diploma privi-

lege. It might require all applicants (or perhaps all appli-
cants who had not practiced for a period of time in
another state) to take a continuing legal education course
in Wisconsin law in lieu of a bar exam. (Some states
impose such requirements, though not in lieu of a bar
exam.) That would give the plaintiffs most of the relief
they seek. We cannot say that the probability of such a
mode of compliance is so slight that the plaintiffs cannot
show that they have anything to gain from winning
their suit and so cannot be permitted to maintain it.
*MainStreet Organization of Realtors v. Calumet City*, 505
F.3d 742, 744 (7th Cir. 2007); *National Wildlife Federation
v. FERC*, 801 F.2d 1505, 1506 n. 1 (9th Cir. 1986); cf. *Pennell
v. City of San Jose*, 485 U.S. 1, 6-8 (1988). A former
president of the Wisconsin Bar Association, an opponent
of the diploma privilege, has been quoted as saying that
"he has no 'preconceived view' as to whether Wisconsin
should abolish the diploma privilege altogether or extend
it to all graduates of ABA accredited law schools nation-
wide." Mark Hansen, "Wisconsin Bar Weighs a Degree
of Change," *ABA Journal*, April 2007, www.abajournal.com/
magazine/wisconsin_bar_weighs_a_degree_of_change/
(visited June 13, 2009).

We said in *MainStreet Organization of Realtors v. Calumet
City*, *supra*, 505 F.3d at 744, that "as long as there is
some nonnegligible, nontheoretical, probability of harm
that the plaintiff's suit if successful would redress . . . , the
fact that a loss or other harm on which a suit is based
is probabilistic rather than certain does not defeat stand-
ing." This is confirmed by the Supreme Court's ruling in
*Northeastern Florida Chapter of Associated General Contractors*

*of America v. City of Jacksonville*, 508 U.S. 656, 664-66 (1993), that the loss of an opportunity to compete for a position (for example because of discrimination) is injury enough to support standing; there is no need to show that the applicant would have won the competition for the position, provided that he had a "realistic chance" of winning. *Nor-West Cable Communications Partnership v. City of St. Paul*, 924 F.2d 741, 749 (8th Cir. 1991); *Doherty v. Rutgers School of Law-Newark,* 651 F.2d 893, 902 (3d Cir. 1981). This shows that a modest probability of injury is enough for standing.

So there is no jurisdictional obstacle to the appeal, and we pass to the merits. The Supreme Court "has adopted what amounts to a two-tiered approach to analyzing state economic regulation under the Commerce Clause. When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits." *Brown-Forman Distillers Corp. v. New York State Liquor Authority*, 476 U.S. 573, 578-79 (1986) (citations omitted). But immediately the Court added that "we have also recognized that there is no clear line separating the category of state regulation that is virtually *per se* invalid under the Commerce Clause, and the category subject to the . . . balancing approach. In either situation

the critical consideration is the overall effect of the statute on both local and interstate activity." *Id*. at 579. This is an acknowledgement that the two tiers sometimes cannot always be distinguished in practice—as this case illustrates. On the one hand, the diploma privilege does favor the economic interests of Wisconsin law schools, but on the other hand it "has only indirect effects on interstate commerce and regulates evenhandedly." For the privilege is not limited to state residents, compare *Daghlian v. DeVry University, Inc.*, 582 F. Supp. 2d 1231, 1241-43 (C.D. Cal. 2007); nor do Wisconsin law schools admit only Wisconsin residents.

A state's right to regulate admission to the practice of law in the state is unquestioned, even though the result is to impede the interstate mobility of lawyers. But since that *is* a consequence, the regulation must be at least minimally reasonable. *National Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1130-32 (7th Cir. 1995); *Government Suppliers Consolidating Services, Inc. v. Bayh*, 975 F.2d 1267, 1285-86 (7th Cir. 1992); *Island Silver & Spice, Inc. v. Islamorada*, 542 F.3d 844, 847-48 (11th Cir. 2008). We emphasize "minimally." The judiciary lacks the time and the knowledge to be able to strike a fine balance between the burden that a particular state regulation lays on interstate commerce and the benefit of that regulation to the state's legitimate interests. *Amanda Acquisition Corp. v. Universal Foods Corp.*, 877 F.2d 496, 505 (7th Cir. 1989). We applied this principle to regulations of bar admission in *Sestric v. Clark*, 765 F.2d 655, 661-64 (7th Cir. 1985).

But in this appeal we find ourselves in an evidentiary vacuum created by the early termination of the case by

the grant of a motion to dismiss. For suppose—a supposition not only consistent with but actually suggested by the scanty record that the plaintiffs were not allowed to amplify—that Wisconsin law is no greater part of the curriculum of the Marquette and Madison law schools than it is of the law schools of Harvard, Yale, Columbia, Virginia, the University of Texas, Notre Dame, the University of Chicago, the University of Oklahoma, and the University of Northern Illinois (which happens to be within a stone's throw of Wisconsin, as are the three law schools in Minneapolis). That would suggest that the diploma privilege creates an arbitrary distinction between graduates of the two Wisconsin law schools and graduates of other accredited law schools. And it is a distinction that burdens interstate commerce. Law school applicants who intend to practice law in Wisconsin have an incentive to attend one of the Wisconsin law schools even if, were it not for the diploma privilege, they would much prefer to attend law school in another state.

In *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977), North Carolina had passed a law requiring apples to be graded according to a local standard. Compliance would have required the unpacking and relabeling of apples shipped from Washington state, and the expense would have made Washington apples noncompetitive with local apples. In both that case and this, the plaintiffs have a good (apples in *Hunt*, legal representation in this case) that they want to sell in a state that makes them jump through more hoops than their local competitors in order to be allowed to sell. It is true

that the out-of-state law schools are hurt along with their graduates who would like to practice in Wisconsin, and that no law schools are plaintiffs. But that cannot help the defendants. The members of the plaintiff associa- tion in the *Hunt* case were middlemen as well as producers, and similarly we can think of the class members in our case as sellers of legal talent "grown" by the law schools they attend.

The effect of the diploma privilege on the decision where to attend law school is well recognized. "Would be lawyers who intend to practice in Wisconsin would be well advised to attend one of the state's two law schools. That's because Wisconsin is the only state in the country that still allows graduates of its two law schools to be admitted to practice without having to take the bar exam." Hansen, *supra*. "Wisconsin is the only state that still allows graduates of in-state law schools to become lawyers without taking a bar exam (called the diploma privilege). This creates some interesting dynamics—UW and Marquette graduates have some extra incentives to stay in WI because it means they can avoid a bar exam, and out-of-state graduates/lawyers have to jump through some extra hoops just to get to the same place as in-state graduates." Eric Goldman, "Wiscon- sin's Diploma Privilege Draws More Questions," *Goldman's Observations Blog*, July 27, 2006, http:// blog.ericgoldman.org/personal/archives/2006/07/   (visited June 13, 2009). Goldman tells "the sad story of Arnie Moncada . . . , who went to Thomas Cooley Law School in Michigan, failed the Wisconsin bar 4 times, and now can't be a lawyer in WI forever . . . while if he had just

graduated from Marquette or UW, he'd be a lawyer now." And he adds: "Personally, I always thought the diploma privilege did Marquette graduates a disservice—it encouraged students to focus on Wisconsin job opportunities in preference of other great options elsewhere. On the other hand, the diploma privilege helps UW and Marquette in the US News rankings every year (it's hard to beat 100% 'passage')." *Id*.

It is enough that an aspiring lawyer's decision about where to study, and therefore about where to live as a student, can be influenced by the diploma privilege to bring this case within at least the outer bounds of the commerce clause; for the movement of persons across state lines, for whatever purpose, is a form of interstate commerce. *Sestric v. Clark*, *supra*, 765 F.2d at 661. The effect on commerce of the discriminatory diploma privilege may be small and, if so, not much would be required to justify it. *Id*. at 664. Our concern is that there may be nothing at all to justify it. The lawyer for the state acknowledged at argument that she has no personal knowledge that Wisconsin law occupies a larger place in the curriculum of the Wisconsin law schools than of law schools elsewhere. For all that appears, the faculties of the Wisconsin law schools use the same casebooks and other teaching materials used at schools in other states—which is likely, since the authors of casebooks aim at a national market. Marquette and Madison are law schools of national stature, and we can hardly infer without any evidence that they concentrate on educating their students in the law of the state that these law schools happen to be located in

rather than prepare them to practice anywhere in the United States. Indeed, since no graduates of these law schools take the Wisconsin bar exam, the faculty has less incentive to spend time drilling them on Wisconsin law than the faculty of most law schools in other states would have to concentrate their teaching on the law of their state in order to increase the bar exam pass rate of their law school's graduates.

The defendants argue that the rule of the Wisconsin Supreme Court that we quoted requires that the curriculum of the Wisconsin law schools include Wisconsin law. But that cannot be inferred from the language of the rule or from the list of mandatory and elective courses. The rule merely requires the law schools to offer a rigorous, well-rounded legal education, and it cannot be assumed that such an education must be oriented toward the law of a particular state, even the state in which the school is located. The reference to "rules and principles of substantive and procedural law as they may arise in the courts and administrative agencies of the United States and this state" may denote those rules and principles that are common across American states, including the rules and principles of federal law, of the common law, and of uniform statutes such as the Uniform Commercial Code—in short, the rules and principles that are the common core of legal studies in all law schools that have a national rather than local orientation. This interpretation of the rule is consistent with the fact that Wisconsin permits lawyers who have practiced in another state for a time to practice in Wisconsin without having to pass the bar exam or demonstrate any knowledge of Wisconsin law.

The fact that the Wisconsin bar exam includes both the Multistate Professional Responsibility Examination and the Multistate Essay Examination is a further indication that the state supreme court does not believe that saturation in Wisconsin law is a prerequisite for members of its bar, though the more important point is that, so far as we can judge from the present record, the Wisconsin law schools include no more Wisconsin law in their curriculum than the law schools of Illinois do.

The defendants argue that the rule creating the diploma privilege, having been issued by the Wisconsin Supreme Court, gives the court a supervisory role in the curriculum of the Wisconsin (but of no other) law schools so that it can assure that the curriculum is rich in Wisconsin law. But we are given no indication that the court plays such a role, or indeed that the rule, which makes no reference to Wisconsin law, would authorize the court to do so. In her brief opinion granting the defendants' motion to dismiss, the district judge made no reference to this or any other justification for the diploma privilege that the defendants have raised in this court.

An alternative possibility might seem to be that the state supreme court, by virtue of its having created the diploma privilege and not revoked it, decided that it trusts the two local law schools to prepare its students for the practice of law in Wisconsin, and trusts no others. But that cannot make any sense if indeed the curriculum of these schools is no more weighted to Wisconsin law than that of countless schools in other states, including the ones the plaintiffs and the members of their class attended. The

two law schools in Wisconsin are very fine law schools, doubtless among the nation's best, but the state does not claim that they are superior to all other law schools; indeed it has not tried to identify any law school that is less worthy of the diploma privilege than the Wisconsin schools.

The defendants cite cases that permit a state to discriminate against interstate commerce when it is engaged in a proprietary rather than a regulatory activity, such as, in *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Management Authority*, 550 U.S. 330 (2007), on which the defendants principally rely, hauling trash—an activity that, though certainly worthy, will not appeal to many lawyers as a suitable analogy to the practice of law. And yes, a state can as in *United Haulers* require trash collectors to dump the trash they collect in a government-owned facility. That is the "market participant" exception to the commerce clause's implied prohibition of discrimination by states against interstate commerce. E.g., *White v. Massachusetts Council of Construction Employers, Inc.,* 460 U.S. 204 (1983); *Reeves, Inc. v. Stake*, 447 U.S. 429, 434-40 (1980). The exception "emphasizes the freedom that states have under the Constitution to provide, often selectively, for the welfare of their residents." *W.C.M. Window Co., Inc. v. Bernardi*, 730 F.2d 486, 494 (7th Cir. 1984). And so a state may if it wants (and most states do want) own and operate a law school—the University of Wisconsin is a state university—and it can if it wants try to attract students from other states by discounting tuition—or by not focusing on local law. A state medical school was held entitled to favor old over new state residents in admissions in *Buchwald v. University of New Mexico School of Medicine*, 159 F.3d 487, 496 n. 9 (10th Cir.

1998). *Any* governmental participation in the economic market is going to have an effect on interstate commerce that people who think that the government governs best that governs least will criticize, but those criticisms, even when well founded, do not invalidate the activity.

Marquette, however, is a private university, and the state in its brief and argument makes no distinction between the Marquette and University of Wisconsin law schools. The state does not connect the diploma privilege to its ownership of the latter school, and how could it, since the privilege applies equally to Marquette? The only governmental function that the state claims to be engaged in that bears on this case is regulating the practice of law, and while that is a legitimate government function it is not exempt from scrutiny under the commerce clause. Every state law invalidated under the commerce clause is a government regulation.

The case was dismissed prematurely, and must go back to the district court for further proceedings consistent with this opinion. We intimate no view on the ultimate outcome; we are remanding because the plaintiffs were denied an opportunity to try to prove their case.

REVERSED AND REMANDED.